UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE FOR A CONSTRUCTIVE TOMORROW, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-774 (LLA) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Committee for a Constructive Tomorrow ("CFACT"), the Heartland Institute, Craig Rucker, National Legal and Policy Center, and Peter Flaherty (collectively, the "Plaintiffs") challenge several agency actions relating to the approval of the Coastal Virginia Offshore Wind Commercial Project ("Project"). Defendants are the United States Department of Interior and its Secretary, Deb Haaland; the United States Bureau of Ocean Energy Management and its Director, Elizabeth Klein; the National Marine Fisheries Service and its Director, Janet Coit; and Secretary of Commerce Gina Raimondo (collectively, the "Government" or "Federal Defendants"), and Virginia Electric and Power Company d/b/a Dominion Energy Virginia ("Dominion Energy" or, collectively, with the Government, the "Defendants"). ECF No. 11. Plaintiffs seek an administrative stay or preliminary injunction enjoining the Project's construction until there is an updated Biological Opinion from the National Marine Fisheries Service that includes an analysis of the cumulative effects of other offshore wind projects on the endangered North Atlantic Right Whale. ECF No. 15.

For the following reasons, the court will **DENY** Plaintiffs' motion for a preliminary injunction.

I. Background

The Project is an offshore wind operation planned for an area on the Outer Continental Shelf ("OCS"), which is approximately twenty-five miles east of Virginia Beach, Virginia. ECF No. 11, ¶ 2. The Project will consist of 176 wind turbines that will be owned and operated by Dominion Energy and have the ability to generate approximately 9.5 million megawatt-hours of renewable energy per year, which would power approximately 660,000 homes. *Id.*; ECF No. 20-1, ¶ 6. It is one of thirty such projects planned for the Atlantic Seaboard. ECF No. 11, ¶ 2.

The North Atlantic Right Whale is an endangered species with a population of 338, including 70 breeding females capable of reproduction. *See* "Taking Marine Mammals Incidental to the Coastal Virginia Offshore Wind Commercial Project Offshore of Virginia," 89 Fed. Reg. 4370, 4391 (Jan. 23, 2024); BOEM and NOAA Fisheries North Atlantic Right Whale and Offshore Wind Strategy (Jan. 2024).[1] They generally breed offshore of New England and then migrate down the Atlantic coast to give birth. *Id.* Plaintiffs contend that "[t]he installation and construction of the [Project], combined with all the other wind turbine projects approved up and down the Atlantic coast, threaten the very existence of this species," because the Project is situated in the whales' migration path. ECF No. 15-1, at 9.

A. The Project's Approval Process

Following the enactment of the Energy Policy Act of 2005, Public Law No. 109-58, which granted the Secretary of the Interior authority to issue OCS leases, easements, or rights-of-way for renewable energy development, the U.S. Bureau of Ocean Energy Management ("BOEM") began

---

[1] *Available at* https://perma.cc/4F24-NLKE.

evaluating the potential for wind energy projects off the coast of the Atlantic Ocean. *See* 43 U.S.C. § 1337(p)(1); ECF No. 19, at 3. By 2019, BOEM had awarded wind energy leases through a competitive bidding process to more than two dozen projects along the coast between Maine and South Carolina. ECF No. 11, ¶ 64; ECF No. 26, ¶ 64. As relevant here, BOEM awarded Dominion Energy a 112,799-acre wind energy lease for an area off the Virginia shore in September 2013. *See* 78 Fed. Reg. 44150 (July 23, 2013).[2]

In December 2020, Dominion Energy submitted the Project's Construction and Operations Plan for federal approval. As part of the lengthy review process, the National Marine Fisheries Service ("NMFS") issued a Biological Opinion in September 2023 concluding that the Project was not likely to jeopardize any species covered by the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, including the Right Whale. *See* National Marine and Fisheries Service, *Biological Opinion* at 215-17 (Sept. 18, 2023) ("BiOp").[3] NMFS also evaluated and authorized limited "incidental harassment" of the Right Whale—namely, potential behavioral disturbance due to underwater noise caused by pile driving. *See* 89 Fed. Reg. 4370, 4372 (Jan. 23, 2024). NMFS classified the incidental harassment as having the "potential to disturb" the Right Whale, rather than having the "potential to injure" the species, and it placed several restrictions on construction to minimize disturbances to the Right Whale. *See id.* at 4370-71; BiOp at 242. The Project received final approval in January 2024, when BOEM, relying on NMFS's Biological Opinion, approved the Construction and Operations Plan with conditions to protect the Right Whale. Letter from Karen J. Baker, Chief of Office of Renewable Energy Programs, Bureau of Ocean Energy Management,

---

[2] *See also* Commercial Lease of Submerged Lands for Renewable Energy Development on the Outer Continental Shelf, OCS-A 0483 (Oct. 14, 2013), https://perma.cc/VCB3-AXGE.

[3] *Available at* https://perma.cc/25UN-TPTM.

to Mark Mitchell, Senior Vice President, Virginia Electric and Power Company (Jan. 28, 2024).[4] Offshore construction was expected to begin in May 2024.  ECF No. 17, at 3.

## B. Procedural Background

On November 11, 2023, CFACT and the Heartland Institute submitted a sixty-day notice of intent to sue challenging the NMFS's Biological Opinion.  ECF No. 11, ¶ 21.  Plaintiffs Peter Flaherty and the National Legal and Policy Center submitted a similar notice on March 7, 2024. ECF No. 11, ¶ 79.  The parties criticized the Biological Opinion for "failing to assess the [Project]'s impacts on the North Atlantic Right Whale when viewed in combination with the other planned and approved offshore projects along the Atlantic Coast."  ECF No. 15-1, at 10.

Plaintiffs filed their complaint on March 18, 2024, ECF No. 1, and sought a preliminary injunction or administrative stay to halt construction on April 29, 2024, ECF No. 15.  The court held a preliminary hearing on the motion and set a briefing schedule.  The motion is now ripe.

## II. Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief."  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017) (alteration in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  To receive a preliminary injunction, the moving party must show (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  Where, as here, the government is an opposing party, the third and fourth factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Additionally, because the Project is a "covered project" under the

---

[4] *Available at* https://perma.cc/G6M8-KWNX.

FAST-41Act, 42 U.S.C. § 4370m *et seq.*, the court, in weighing the equities, must "(1) consider the potential effects on public health, safety, and the environment, and the potential for significant negative effects on jobs resulting from an order or injunction; and (2) not presume that the harms described in paragraph (1) are reparable." *Id.* § 4370m-6(b).

With respect to Plaintiffs' request for a stay, the Administrative Procedure Act ("APA") permits a court reviewing agency action to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" if it is "necessary to prevent irreparable injury." 5 U.S.C. § 705. The standard for a stay is the same as for a preliminary injunction. *See Nken*, 556 U.S. at 433-34. Because the public is "generally entitled to the prompt execution" of final agency orders, a stay "'is not a matter of right, even if irreparable injury might otherwise result to the [plaintiff].'" *Id.* at 427 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

### III. Discussion

Plaintiffs argue that a preliminary injunction or administrative stay is necessary because NMFS's Biological Opinion falls short of what is required by the ESA in that it does not consider the cumulative effect of other federal wind projects on the Right Whale and that Plaintiffs will suffer irreparable harm in the absence of court intervention. Defendants counter that Plaintiffs lack standing and cannot meet the standards for a preliminary injunction or administrative stay. The court concludes that Plaintiffs have established a substantial likelihood of standing but have not demonstrated that they will face irreparable injury in the absence of a preliminary injunction or stay.

#### A. Standing

"A party seeking a preliminary injunction 'must show a substantial likelihood of standing.'" *Green v. U.S. Dep't of Justice*, 54 F. 4th 738, 744 (D.C. Cir. 2022) (quoting *Food &*

5

*Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). "In order to satisfy Article III's standing requirements, plaintiffs must demonstrate injury-in-fact (concrete and particularized, actual or imminent), caused by the defendant and capable of being redressed by a court order." *Nat'l Parks Conservation Ass'n v. Manson*, 414 F.3d 1, 4 (D.C. Cir. 2005). Where, as here, plaintiffs are alleging a "procedural injury" in the form of a deficient Biological Opinion, "the redressability and imminence requirements" are "relax[ed]." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013). The court "need only find one party with standing" in order to proceed. *Ams. for Safe Access v. Drug Enf't Admin.*, 706 F.3d 438, 443 (D.C. Cir. 2013).

The court concludes that Plaintiffs have shown a sufficient likelihood that at least one Plaintiff—Craig Rucker—has standing to seek a preliminary injunction or administrative stay. To begin, Mr. Rucker has sufficiently alleged an injury-in-fact. "A procedural injury claim . . . must be tethered to some concrete interest adversely affected by the procedural deprivation." *WildEarth Guardians*, 738 F.3d at 305. "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992). Mr. Rucker has an abiding interest in the Right Whale, he has concrete plans to observe the Right Whale in the near future, and he believes that the Project will interfere with these plans. Specifically, as detailed in his declaration, Mr. Rucker has "made several trips on the coastal waters of the eastern United States for whale-watching," has "seen Right Whales during some of these trips[,] and intend[s] to continue such trips to again observe one of these magnificent marine mammals." ECF No. 15-2, ¶ 4. He has "reserved a spot on a whale-watching trip" with a Virginia-based tour group in December 2024, going "to a location where Right Whales are known to be present and at a time of the year when the odds of seeing

6

these whales are best." *Id.* ¶ 5.  And he believes that the Project will have an "adverse impact on the Right Whale species . . . forever foreclosing [his] ability to enjoy seeing the[] whales." *Id.* ¶ 6.

Mr. Rucker has also established causation.  "[C]ausation in the context of a procedural injury requires a showing of two causal links: 'one connecting the omitted [procedural step] to some substantive government decision that may have been wrongly decided because of the lack of [that procedural requirement] and one connecting that substantive decision to the plaintiff's particularized injury.'"  *Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 184 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 668 (D.C. Cir. 1996)).  A plaintiff need not show but-for causation but must show that "the procedural step was connected to the substantive result" and that there is a "substantial probability" that the procedural mistake will create an adverse effect.  *Id.* at 184-85 (first quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002); then quoting *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 63 (D.C. Cir. 2000) (per curiam)).  Both links are present here: Mr. Rucker contends that NMFS's failure to consider cumulative effects resulted in a deficient Biological Opinion, ECF No. 15-2 ¶ 3, n.3, leading to approval of a project that will hinder his ability to observe the Right Whale, ECF No. 11, ¶ 24.  That is sufficient at this stage of the proceeding.

As for the relaxed redressability requirement, "[a] procedural-rights plaintiff need not show that 'court-ordered compliance with the procedure would alter the final [agency decision].'" *Ctr. for Biological Diversity*, 861 F.3d at 185 (quoting *Nat'l Parks Conservation Ass'n*, 414 F.3d at 5). Rather, all a plaintiff must show is that a "revisitation" would redress the injury "because [the agency] *could* reach a different conclusion." *Id.*  That has been established here because an order requiring NMFS to consider cumulative effects in its Biological Opinion could cause NMFS to reach a different conclusion regarding the Project's effects on the Right Whale.

Accordingly, the court concludes that Plaintiffs have shown a substantial likelihood that at least one plaintiff, Mr. Rucker, has standing to seek a preliminary injunction or administrative stay.

### B.     Preliminary Injunction/Stay

While Plaintiffs have shown a substantial likelihood of standing, they have not demonstrated that they will suffer irreparable harm in the absence of a preliminary injunction or administrative stay. That is a sufficient basis to deny their motion. *Dallas Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 398 (D.D.C. 2020) (explaining that "if a court concludes that a movant has not demonstrated irreparable harm, it need not even consider the remaining factors"); *see CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (similar).

There is "a high standard for irreparable injury" when considering a request for a preliminary injunction or stay. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). "A prospective injury that is sufficient to establish standing . . . does not necessarily satisfy the more demanding burden of demonstrating irreparable injury." *Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018). "[T]he injury 'must be both certain and great; it must be actual and not theoretical.'" *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). Plaintiffs have not met this high standard.

Plaintiffs argue that Project construction, particularly pile driving, will more likely than not hasten the decline and eventual extinction of the Right Whale. ECF No. 15-1, at 23-24. But Plaintiffs fail to take into account the extensive measures already in place to minimize potential harm to the Right Whale during construction. Among other things, the Biological Opinion and Construction and Operations Plan limit significant construction to May through October, because that is when Right Whales are unlikely to be in the vicinity; require that construction be halted in the event a Right Whale is spotted; and mandate that Dominion Energy implement a

comprehensive Vessel Strike Avoidance Plan. BiOp at 18, 244-46. Additionally, consistent with the Biological Opinion and Construction and Operations Plan, Defendants have agreed to five different mitigation plans to protect species, including the Right Whale, during in-water construction. *See* Defendants' Joint Status Report, ECF No. 17, at 2-3. Plaintiffs have not explained why these measures would not be sufficient to protect the Right Whale during the pendency of this litigation.

What is more, NMFS concluded in the Biological Opinion that "no mortality or permanent injury (auditory or other) is expected" from the Project, BiOp at 216, and Plaintiffs do not appear to seriously contest that conclusion. At most, Mr. Rucker states that "[t]he combined adverse impacts of the Dominion Wind Project with other wind projects *may* cause this highly endangered species . . . to disappear." ECF No. 15-2 at ¶ 6 (emphasis added); *see* ECF No. 15-3 at 2 (Hayes letter asserting that "offshore wind development *will likely* cause added stress that could result in additional population consequences to a species that is already experiencing rapid decline" (emphasis added)). Such equivocal statements fall short of showing an injury that is "certain" or "actual" for purposes of a preliminary injunction or stay. *See Cal. Ass'n of Private Postsecondary Schs.*, 344 F. Supp. 3d at 172 ("By definition, uncertainty falls short of the type of actual and imminent threat needed to show irreparable injury.").

Finally, the court deems it relevant, but not dispositive, that Plaintiffs waited until the eve of in-water construction to file their motion. "Courts in this jurisdiction have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm.'" *Dallas Safari Club*, 453 F. Supp. 3d at 403 (quoting *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005)). Plaintiffs' delay

contributes to the court's conclusion that a preliminary injunction or administrative stay is unwarranted.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for an Administrative Stay or Preliminary Injunction, ECF No. 15, is hereby **DENIED**.

**SO ORDERED**.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: May 24, 2024