# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| COMMITTEE FOR A CONSTRUCTIVE TOMORROW, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 24-cv-00774 (LLA) |
| | ) | Hon. Loren L. AliKhan |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## DOMINION ENERGY VIRGINIA'S MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Introduction .................................................................................................................. 1

Background .................................................................................................................. 3

    A.   CVOW Overview. ............................................................................................ 3

    B.   National Environmental Policy Act. ............................................................... 5

    C.   Endangered Species Act. ................................................................................. 6

Standard of Review ................................................................................................... 10

Argument ................................................................................................................... 12

I.     NMFS Did Not Violate the ESA. ......................................................................... 12

    A.   NMFS Adhered to Its Duly Promulgated, Longstanding ESA Regulations Defining the Scope of Relevant Cumulative Effects. ................................... 12

    B.   Plaintiffs Here Cannot Challenge NMFS's Regulatory Definition of "Cumulative Effects." ................................................................................... 17

    C.   The Administrative Record Demonstrates that NMFS Adequately Analyzed Potential NARW Impacts from CVOW. ....................................... 20

II.    BOEM Did Not Violate the ESA. ........................................................................ 22

III.   Plaintiffs Lack Standing. ...................................................................................... 24

IV.   Plaintiffs Fail to Justify Their Requested Remedies. ........................................... 28

Conclusion ................................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ................................................... 28

*Am. Legal Found. v. F.C.C.*,
  808 F.2d 84 (D.C. Cir. 1987) ..................................................... 25

*Appalachian Power Co. v. EPA*,
  251 F.3d 1026 (D.C. Cir. 2001) .................................................. 21

*Baltimore Gas & Elec. Co. v. NRDC*,
  462 U.S. 87 (1983) .................................................................... 20

*Burns v. Barnhart*,
  312 F.3d 113 (3rd Cir. 2002)....................................................... 19

*Camp v. Pitts*,
  411 U.S. 138 (1973) ................................................................... 11

*Center for Biological Diversity v. Regan*,
  No. 21-119, 2024 WL 1602457 (D.D.C. Apr. 12, 2024) ............. 23

*City of Tacoma v. FERC*,
  460 F.3d 53 (D.C. Cir. 2006) ..................................................... 24

*Comtys. for a Better Env't v. E.P.A.*,
  748 F.3d 333 (D.C. Cir. 2014) ................................................... 11

*Conner v. Burford*,
  848 F.2d 1441 (9th Cir. 1988)..................................................... 17

*Corner Post, Inc. v. Board of Governors*,
  603 U.S. 799 (2024) ................................................................... 19

*Ctr. for Biological Div. v. Regan, No 21-119*,
  2024 WL 1602457 (D.D.C. April 12, 2024) ................................ 16

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
  698 F.3d 1101 (9th Cir. 2012)..................................................... 14

*Dallas Safari Club v. Bernhardt*,
  518 F. Supp. 3d 535 (D.D.C. 2021) ............................................ 21

*Dallas Safari Club v. Bernhardt*,
  518 F. Supp. 3d 535 (D.D.C. 2021) ............................................ 11

*Defs. of Wildlife v. Norton,*
   No. 99-927, 2003 WL 24122459 (D.D.C. Jan. 7, 2003) ........................................................ 16

*Dep't of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ................................................................................................... 11, 21

*Dep't of Transportation v. Pub. Citizen,*
   541 U.S. 752 (2004) ............................................................................................................. 21

*Diaz v. Kaplan Higher Educ., LLC,*
   820 F.3d 172 (5th Cir. 2016) .............................................................................................. 10

*Fulbright v. McHugh,*
   67 F. Supp. 3d 81 (D.D.C. 2014) ................................................................................... 10, 11

*Fund Democracy, LLC v. S.E.C.,*
   278 F.3d 21 (D.C. Cir. 2002) .............................................................................................. 26

*Fund for Animals v. Hall,*
   448 F. Supp. 2d 127 (D.D.C. 2006) ............................................................................... 16, 23

*Gettman v. Drug Enf't Admin.,*
   290 F.3d 430 (D.C. Cir. 2002) ............................................................................................ 26

*Green Oceans v. United States Department of Interior,*
   No. 24-141-RCL, 2024 WL 1885543 (D.D.C. Apr. 30, 2024) ............................................. 3

*Greenlaw v. U.S.,*
   554 U.S. 237 (2008) ............................................................................................................. 18

*Kinsella v. Bureau of Ocean Energy Management,*
   No. 22-2147-JMC, 2022 WL 16852674 (D.D.C. Nov. 10, 2022) ......................................... 3

*Kinsella v. Bureau of Ocean Energy Management,*
   No. 23-02915, 2023 WL 3571300 (E.D.N.Y. May 18, 2023) .......................................... 3, 26

*Kisor v. Wilkie,*
   588 U.S. 558 (2019) ............................................................................................................. 19

*Loper Bright Enters. v. Raimondo,*
   144 S. Ct. 2244 (2024) ........................................................................................... 12, 19, 20

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................................. 25

*Mahoney v. United States Department of Interior,*
   No. 22-01305, 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022) .............................................. 3

*Maine Lobstermen Association v. NMFS*,
    70 F.4th 582 (D.C. Cir. 2023) ............................................................... 19

*Marsh v. Or. Nat. Res. Council*,
    490 U.S. 360 (1989) .............................................................................. 20

*McKinney v. U.S. Postal Serv.*,
    75 F. Supp. 3d 266 (D.D.C. 2014) ......................................................... 18

*Melone v. Coit*,
    2024 WL 1792762 (1st Cir. Apr. 25, 2024) ............................................. 2

*Merrell Dow Pharms. v. Thompson*,
    478 U.S. 804 (1986) .............................................................................. 18

*Miccosukee Tribe of Indians of Fla. v. U.S.*,
    566 F.3d 1257 (11th Cir. 2009)....................................................... 14, 20

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) .............................................................................. 28

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................ 11

*N. Slope Borough v. Andrus*,
    624 F.2d 589 (D.C. Cir. 1980) ............................................................... 16

*Nantucket Residents Against Turbines v. BOEM*,
    100 F.4th 1 (1st Cir. Apr. 24, 2024).............................................. passim

*Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*,
    675 F. Supp. 3d 28 (D. Mass. 2023) ...................................................... 20

*Nat. Res. Def. Council v. Pena*,
    147 F.3d 1012 (D.C. Cir. 1998) ............................................................. 25

*Ninth Circuit in Pacific Coast Federation of Fishermen's Ass'n v. NMFS*,
    265 F.3d 1028 (9th Cir. 2001)............................................................... 16

*Noble Energy, Inc. v. Salazar*,
    691 F. Supp. 2d 14 (D.D.C. 2010) ........................................................... 6

*Pacific Coast Federation of Fishermen's Ass'n v. NMFS*
    265 F.3d 1028 (9th Cir. 2001)............................................................... 16

*Public Employees for Environmental Responsibility v. Beaudreau*,
    25 F. Supp. 3d 67 (D.D.C. 2014) ............................................................. 6

*Regents of the Univ. of California v. Burwell*,
  155 F. Supp. 3d 31 (D.D.C. 2016) ........................................ 10

*Regents of the Univ. of California v. Price*,
  681 F. App'x 5 (D.C. Cir. 2017) ........................................ 10

*Save Long Beach Island v. United States Department of Commerce*,
  No. 23-1886, 2024 WL 863428 (D.N.J. Feb. 29, 2024) ........................ 3

*Seafreeze Shoreside, Inc. v. Dep't of Interior*,
  No. 23-1853, 2024 WL 4986216 (1st Cir. Dec. 5, 2024) .................. 2, 6, 21

*Seafreeze Shoreside, Inc. v. United States Department of Interior*,
  2023 WL 6691015 (Oct. 12, 2023) ........................................ 3

*Sec. of Interior v. California*,
  464 U.S. 312 (1984) .................................................... 17

*Sierra Club v. E.P.A.*,
  292 F.3d 895 (D.C. Cir. 2002) .......................................... 25

*Sierra Club v. NMFS*
  No. DLB-20-3060, 2024 WL 3860211 (D. Md. Aug. 19, 2024) ................. 16

*Sierra Club v. U.S. Army Corps of Engineers*,
  803 F.3d 31 (D.C. Cir. 2015) ........................................... 27

*Sierra Club v. U.S. Dep't of Interior*,
  990 F.3d 898 (5th Cir. 2021) ........................................... 14

*Thomas v. Peterson*,
  753 F.2d 754 (9th Cir. 1985) ........................................... 17

*Wild Fish Conservancy v. Salazar*,
  628 F.3d 513 (9th Cir. 2010) ........................................... 19

**Statutory Authorities**

5 U.S.C. § 706 ...................................................... 10, 11

16 U.S.C. §§ 1531, *et seq* ............................................. 6

16 U.S.C. § 1532(19) .................................................... 7

16 U.S.C. § 1536(a)(2) ............................................. 7, 13, 15

16 U.S.C. § 1536(a)(3) ................................................. 15

vi

16 U.S.C. § 1536(b) ............................................................................................. 7

16 U.S.C. § 1536(o) ............................................................................................. 7

16 U.S.C. § 1538 ................................................................................................. 7

28 U.S.C. § 2401(a) ........................................................................................... 18

42 U.S.C. §§ 4321, *et seq* ..................................................................................... 5

42 U.S.C. §§ 4370m, *et seq* .................................................................................. 5

42 U.S.C. § 4370m(6) .......................................................................................... 5

43 U.S.C. § 1337(p) ........................................................................................... 17

Va. Code § 56-585.1:11 C.1 ................................................................................. 6

Va. Code § 56-585.1 A.1-3 ................................................................................. 26

Va. Code § 56-585.1 A.6 .................................................................................... 26

Va. Code § 56-585.1.11 C.3 ............................................................................... 26

Va. Code § 56-585.1.11 C.4 ............................................................................... 26

Va. Code § 56-585.5 ............................................................................................ 6

**Rules and Regulations**

40 C.F.R. § 1503.3 ............................................................................................. 21

40 C.F.R. § 1508.1(i)(3) .................................................................................... 23

50 C.F.R. § 402.02 ...................................................................................... passim

50 C.F.R. § 402.02(c) ........................................................................................ 13

50 C.F.R. § 402.02 ...................................................................................... 15, 17

50 C.F.R. § 402.14(g)(2)-(4) ............................................................................. 13

50 C.F.R. § 402.14(g)(4) .................................................................................... 15

51 Fed. Reg. 19,926 (June 3, 1986) .............................................................. 14, 23

BOEM, Final Sale Notice, 78 Fed. Reg. 44 (July 23, 2013) .................................. 17

89 Fed. Reg. 4,380 (Jan. 23, 2024) ...................................................................... 9

## INTRODUCTION

Plaintiffs' challenge to the Coastal Virginia Offshore Wind Commercial Project ("CVOW") does not actually challenge any analysis or decision regarding CVOW itself.  For example, Plaintiffs do not challenge many CVOW-related federal, state, and local approvals following several years and thousands of pages of detailed analysis.  Regarding the North Atlantic right whale ("NARW"), the sole basis for Plaintiffs' claimed injuries, Plaintiffs acknowledge that no NARW injury or mortality is authorized to begin with, including under the challenged National Marine Fisheries Service ("NMFS") Biological Opinion ("BiOp", NOAA_000001–355).  Dkt. 11 ¶ 88 ("'[n]o mortality or permanent injury (auditory or other) is expected from (…) the proposed action during the construction, operations, or decommissioning phases of the project'") (quoting BiOp, NOAA_000217);[1] Dkt. 36-1 (Pls. Br.) at 4.  This Court recognized as much in denying Plaintiffs' request for preliminary relief.  Dkt. 28 at 9 (finding that "Plaintiffs do not appear to seriously contest" that CVOW will not cause mortality or injury to NARW).  Plaintiffs also "[do] not challenge NMFS's scientific judgments about the information the agency considered."  Dkt. 22 at 10.  Those concessions, along with others cited herein and further discussed by Federal Defendants, likewise defeat Plaintiffs' motion for summary judgment.

Plaintiffs' lone argument on summary judgment instead points to analyses of *other* projects.  Specifically, Plaintiffs argue that the CVOW BiOp insufficiently considered NARW "cumulative effects" from every conceivable future, federally-authorized offshore wind project.  As Plaintiffs acknowledge, however, that argument contradicts decades-old regulations defining

---

[1] Citations beginning with "NOAA_" or "BOEMCVOW_" correspond to the respective Bates-numbering of those two administrative records lodged by Federal Defendants in this case.  *See* Dkt. 10, 10-1, 10-2, 35, 35-1, 35-2.

Endangered Species Act ("ESA") "cumulative effects" explicitly to exclude future projects with federal involvement, which will undergo their own ESA review when ripe. 50 C.F.R. § 402.02. NMFS did not violate the ESA by adhering to its regulations. Plaintiffs' argument ignores the administrative record documenting NMFS's comprehensive, conservative assessment of any NARW impacts from CVOW individually or cumulatively—including from already federally approved offshore wind projects and future non-federal projects—and the BiOp's suite of imposed NARW protective measures. Plaintiffs further acknowledge the Bureau of Ocean Energy Management's ("BOEM") adoption of the BiOp's strict conditions and BOEM's own broader analysis of NARW cumulative impacts under the National Environmental Policy Act ("NEPA")— and then proceed to waive their NEPA claim in this case.

This litigation is part of a broader agenda to stop all offshore wind development, wherein Plaintiffs' same counsel has filed suit against almost every approved offshore wind project on the East Coast. But as Plaintiffs previously advised the Court, "in this case, CFACT only challenges the Government's approval of the Dominion Wind Project, not the entire program." Dkt. 22 at 4. What is more, each court to date that has reached the merits of offshore wind challenges has rejected them, including allegations of the exact type here—*i.e.*, insufficient NARW consideration and protection. *E.g.*, *Nantucket Residents Against Turbines v. BOEM*, 100 F.4th 1 (1st Cir. Apr. 24, 2024); *Melone v. Coit*, 2024 WL 1792762 (1st Cir. Apr. 25, 2024); *cf. Seafreeze Shoreside, Inc. v. Dep't of Interior*, No. 23-1853, 2024 WL 4986216 at *9-13 (1st Cir. Dec. 5, 2024) (affirming decision that plaintiffs had no standing to raise various claims related to alleged impacts to NARW). Similarly, no court to date has found a likelihood of success on the

merits supporting preliminary relief for plaintiffs challenging offshore wind projects.[2]  Plaintiffs' claims here should fare no better.

Virginia Electric and Power Company, d/b/a Dominion Energy Virginia ("DEV"), supports and concurs with Federal Defendants' arguments and positions set forth in their cross-motion for summary judgment, with which DEV aims to minimize duplication in this filing.  *See* Dkt. 38-1.  Respectfully, this Court should grant summary judgment for Defendants and deny summary judgment for Plaintiffs.

## BACKGROUND

### A.     CVOW Overview.

The approximately $9.8 billion CVOW project is critical to national, Virginia, and DEV policy and renewable energy targets.  *See, e.g.*, Va. Code § 56-585.1:11 C.1,  56-585.5 (directing DEV to construct substantial new offshore energy generation).  BOEMCVOW_7765, 121123, 121135.  DEV is a regulated public utility that provides electricity to approximately 2.8 million residential, commercial, industrial, and governmental customers in Virginia and North Carolina. BOEMCVOW_121123, 121149.  In 2013, BOEM awarded DEV through a competitive bidding process a wind energy lease for a 112,799-acre area located 27 miles off the coast of Virginia Beach, Virginia.  *See* BOEMCVOW_21, 37–38, 143.  The CVOW project on that lease involves the construction and operation of 176 new 14.7-megawatt ("MW") capacity wind turbine

---

[2] *See Green Oceans v. U.S. Dep't of Interior*, No. 24-141-RCL, 2024 WL 1885543 (D.D.C. Apr. 30, 2024); *Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 22-2147-JMC, 2022 WL 16852674, (D.D.C. Nov. 10, 2022); *Kinsella v. Bureau of Ocean Energy Mgmt.*, No. 23-02915, 2023 WL 3571300 (E.D.N.Y. May 18, 2023); *Mahoney v. U.S. Dep't of Interior*, No. 22-01305, 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022); *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, 2023 WL 6691015 (Oct. 12, 2023), *aff'd* No. 23-1853, 2024 WL 4986216 (1st Cir. Dec. 5, 2024); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 23-1886, 2024 WL 863428 (D.N.J. Feb. 29, 2024).

generators, three offshore substations, and associated inter-array cabling between the wind turbine generators and substations capable of generating 2.6 gigawatts ("GW") of renewable energy at full buildout. NOAA_000010, 15; BOEMCVOW_2089. Once operational, CVOW's nameplate capacity will be capable of supplying renewable energy to approximately 660,000 homes, generating 8.8 million megawatt hours of energy per year. BOEMCVOW_2139,120989, 121054. This represents five million tons of avoided carbon dioxide emissions annually, which is the same effect as taking one million cars off the road each year. *See* BOEMCVOW_121135.

As required by the Outer Continental Shelf Lands Act ("OCSLA"), BOEM regulations, and its offshore lease, DEV submitted its proposed Construction and Operations Plan ("COP") for CVOW to BOEM in December 2020. BOEMCVOW_2135, 27378–28211. The COP underwent years of comprehensive environmental review, consultation, and revisions, with no fewer than seven submitted COP updates, and a final COP submission on September 8, 2023. BOEMCVOW_17975–17977, 120988–122337.[3] Federal, state, and local agencies also reviewed CVOW under other applicable statutes, including the ESA, National Environmental Policy Act ("NEPA"), Marine Mammal Protection Act ("MMPA"), Coastal Zone Management Act, National Historic Preservation Act, Clean Water Act, Rivers and Harbors Act, and Clean Air Act. BOEMCVOW_690–697 (list and description of required environmental permits and consultations and cooperating agencies). Those environmental reviews and permitting processes included extensive analyses of potential CVOW impacts to NARW. *See, e.g.*, NOAA_000747

---

[3] For prior COP updates, *see* BOEMCVOW_32477–36119, BOEMCVOW_34328–36441 BOEMCVOW_3054–3056, 3059, 3228–3234, 3240–3246, 25219–25225, 32477–34325, 34328–34467, 35600–36441 (June 2021 updates); BOEMCVOW_5534–5536, 39323–40101 (October 2021 updates); BOEMCVOW_44499–45411 (December 2021 update); BOEMCVOW_77726–78803, 83834–84750 (May 2022 updates); BOEMCVOW_10601–10602, 10868–10881, 110029–112079, 84751–85068 (January/February 2023 updates); BOEMCVOW_14581–14587, 15152–15159, 117876–119710 (July 2023 updates).

(NMFS's final MMPA rule assessing CVOW impacts to NARW).  CVOW received all requisite federal, state, and local agency approvals and permits (of which the NMFS BiOp is the only one challenged here).  BOEMCVOW_688–701.  BOEM approved the COP on January 28, 2024.  BOEMCVOW_2310.

CVOW is a "covered" project under the "FAST-41" major infrastructure facilitation law.  42 U.S.C. §§ 4370m, *et seq.*; Dkt. 28 at 4-5 (recognizing same in denying a stay or preliminary injunction in this case); BOEMCVOW_121137.  This designation means that CVOW meets the sector type, size, cost, and complexity criteria to qualify as an important infrastructure project warranting interagency prioritization and coordination.  42 U.S.C. § 4370m(6).  FAST-41 covered projects are subject to a comprehensive, integrated federal permitting schedule publicly posted on the Federal Permitting Improvement Steering Council's FAST-41 Permitting Dashboard ("Dashboard").[4]  BOEM also publicly maintains key CVOW updates and project documents on its own website.[5]  CVOW construction offshore and onshore is ongoing.[6]

### B.     National Environmental Policy Act.

NEPA is a procedural statute requiring federal agencies to consider the impacts of their proposed major federal actions on the human environment and involve the public in that important review.  42 U.S.C. §§ 4321, *et seq.*  BOEM issued its Notice of Intent to prepare an Environmental Impact Statement ("EIS") under NEPA on July 2, 2021.  BOEMCVOW_19120.

---

[4] *See* https://www.permits.performance.gov/permitting-project/fast-41-covered-projects/coastal-virginia-offshore-wind-commercial-project; https://www.permits.performance.gov/sites/permits.dot.gov/files/2022-09/FPISC_090922.pdf.
[5] *See* https://www.boem.gov/renewable-energy/state-activities/CVOW-C.
[6] DEV has recently requested approval in 2025 for commencement of foundation piling activities during nighttime hours and for other minor protocol adjustments.  BOEM and NMFS are presently considering that request, and no changes to the existing BiOp that Plaintiffs challenge here, or the related existing MMPA authorization (which Plaintiffs do not challenge), have been made.

NMFS was a cooperating agency on the EIS.  BOEMCVOW_43.  The Draft EIS was issued on

December 16, 2022.  BOEMCVOW_11619.  The Final EIS was issued on September 29, 2023.

BOEMCVOW_1–2130.  The Record of Decision ("ROD") concluding the NEPA process was

issued on October 30, 2023.  BOEMCVOW_2131–2309.

Plaintiffs' Amended Complaint alleges that the EIS and ROD are a "violation of NEPA"

by BOEM.  *See* Dkt. 11 at 34-35.  Yet Plaintiffs' summary judgment motion does not even

argue, let alone support, any alleged NEPA violation.  Plaintiffs' NEPA claim is thus forfeited,

and is not further addressed herein.  *See Seafreeze*, 2024 WL 4986216 at *15 (plaintiffs waived

NEPA claim where their merits briefing "did not elaborate upon" allegations based on

challenged offshore wind project's purportedly unanalyzed "incremental impact" with potential

future offshore wind projects); *Public Employees for Environmental Responsibility v.*

*Beaudreau*, 25 F. Supp. 3d 67, 129 (D.D.C. 2014) (specific NEPA claims in complaint but not

raised in summary judgment briefing deemed waived); *Noble Energy, Inc. v. Salazar*, 691 F.

Supp. 2d 14, 23 at n.6 (D.D.C. 2010) (plaintiffs "abandoned" argument challenging agency's

decision under the APA where they failed to argue it in their summary judgment briefing).

## C.    Endangered Species Act.

Plaintiffs' remaining claims challenge only the BiOp for CVOW issued by NMFS, and

adopted by BOEM, under the ESA.  NOAA_000001–355.  The BiOp allows *no* NARW physical

harm, let alone mortality.  NOAA_000217.  Instead, it covers, among other things, temporary

noise disturbances associated with the construction of CVOW, prohibits pile-driving activities

during times when NARW are likely present, and requires that DEV implement a comprehensive

suite of mitigation measures to protect NARW.  *Id.*

The ESA, 16 U.S.C. §§ 1531, *et seq*., affords protections to "listed" species by

prohibiting their "take" unless authorized, and by requiring "[e]ach federal agency" to consult

with NMFS to ensure that any "action" that the agency proposes to "authorize" (termed an "agency action") is "not likely to jeopardize" the continued existence of any listed species. 16 U.S.C. §§ 1536(a)(2) (known as "Section 7" consultation), 1538. "Take" includes a wide range of impacts to a listed species, not all of which involve physical harm or mortality. *Id.* at § 1532(19). ESA Section 7 consultation is required where take may occur that is incidental to an otherwise lawful activity permitted by a federal agency. Where such incidental take is likely to occur, ESA consultation concludes with issuance of a biological opinion and incidental take statement. 16 U.S.C. §§ 1536(b), (o).

Here, BOEM submitted its ESA Section 7 consultation request package (including BOEM's biological assessment) to NMFS in February 2023, and NMFS determined the consultation package was complete and initiated consultation in April 2023. BOEMCVOW_17001–17268; NOAA_001979. NMFS issued the BiOp and incidental take statement on September 18, 2023, seven months before Plaintiffs filed this case. NOAA_000001–0355. BOEM adopted the BiOp in its COP approval on January 28, three months before Plaintiffs filed this case. BOEMCVOW_2313.

NMFS rationally and comprehensively concluded that CVOW is not likely to jeopardize the continued existence of NARW or any other ESA-listed species, or to adversely affect any NARW designated critical habitat—none of which exists in the project area. NOAA_000053-54, 69, 231. As Plaintiffs acknowledge, NMFS determined that "'[n]o mortality or permanent injury (auditory or other) is expected from (…) the proposed action during the construction, operations, or decommissioning phases of the project.'" Dkt. 11, ¶ 88 (quoting BiOp, NOAA_000217). NMFS found that CVOW's only potential impact-producing factors for NARW were from foundation piling underwater noise during construction; Plaintiffs do not

contest this finding either. NOAA_000217. The BiOp included an anticipated and authorized incidental take harassment of up to six NARW for each of CVOW's primary construction years (2024 and 2025) only via temporary behavior disturbance from sporadic underwater noise incidental to piling. NOAA_000194, 232. Such temporary behavioral disturbance is distinct from physical injury, including permanent hearing loss, none of which is authorized from CVOW for NARW. NOAA_000137-38, 194.

NMFS conservatively required a comprehensive set of reasonable and prudent measures designed to avoid or minimize effects of anticipated incidental take. NOAA_000233-47. This Court recognized as much in denying Plaintiffs' motion for injunctive relief. Dkt. 28 at 8-9 ("But Plaintiffs fail to take into account the extensive measures already in place to minimize potential harm to the Right Whale during construction."). Critically, the BiOp prohibits DEV from performing any monopile foundation pile driving between November 1 and April 30, which is when NARW are expected to migrate near the project area. NOAA_000019, 21, NOAA_000196, 298, 329. Pertinent to NARW protection, the BiOp also requires:

***Sound muffling around the CVOW construction area.*** DEV must use double big bubble curtains around each pile during pile-driving activities to suppress underwater noise and vibrations. NOAA_000041, 329-31. Bubble curtains are noise-mitigating compressed air systems that create bubble barriers for sound absorption in water, which help by attenuating the sound waves from foundation installation activities. *Id*. Such bubble curtains have been used successfully for offshore wind project construction. *Id*.

***Soft start to pile-driving activities.*** When beginning impact pile-driving activities, the BiOp requires that DEV use the "soft-start" process, which entails using a lower energy hammer for an initial period so as to warn any marine life (including NARW) in the vicinity to leave

8

before transitioning to the fully energized hammer.  NOAA_000195, 217–219, 222.  This technique reduces the likelihood of marine mammal presence in the operating area when any louder impact pile driving begins.  NOAA_000303, 336.

*No start to pile driving if NARW observed*.  If NARW are observed, pile driving cannot begin until one hour after the observation.  NOAA_000302, 331-33; 89 Fed. Reg. at 4,461.

*Stop work requirements.*  If NARW are observed during pile-driving activities, such activities must stop immediately until 30 minutes have passed with no further sightings or acoustic detections.  NOAA_000302-03, 331-33; 89 Fed. Reg. at 4,462.

*Species monitoring during pile driving and other construction activities.*  Even when pile driving is allowed (between May 1 and October 31), DEV must use passive acoustic monitoring ("PAM") systems operating to detect vocalizations of marine mammals (including NARW) that may be approaching the work area.  NOAA_000042, 196, 243, 300-01, 329, 331, 345-47, 348–49.  These PAM measures are required before, during, and after pile-driving activities, specifically 60 minutes prior to the initiation of soft start, throughout foundation installation, and for 30 minutes after pile driving has been completed.  NOAA_000301.  NARW detection capability must extend up to 10 km (6.2 miles) from the pile-driving location, thereby affording project teams ample warning of a potential NARW in the area and allowing work to stop so as to mitigate any potential impacts to NARW.  NOAA000747, 756, 838.  Additionally, DEV must employ NMFS-approved protected species observers ("PSO") for at least 60 minutes before until 30 minutes after each pile-driving activity.  NOAA_000230, 231-33, 346.

*Vessel strike avoidance measures.*  All project vessels, regardless of size, must maintain designated separation distances from NARW and other species, must not exceed 10 knots (11.5 mph) in the Mid-Atlantic Bight (the coastal region running from Massachusetts to North

9

Carolina) from November through April (a required reduced speed for species protection), and generally must not exceed 10 knots year-round in the transit corridor which is defined as the path between the lease area and the project port facilities (also for species protection). NOAA_000205, 245-46, 297, 327-39.  Additionally, all vessels under contract with DEV are required to employ specially trained lookouts, including PSOs, during all operations to identify ESA-listed species, including NARW.  NOAA_000297.[7]  With these measures in place, the BiOp found "vessel strike of ESA-listed whales to be extremely unlikely to occur and, therefore, discountable."  NOAA_000205.

**STANDARD OF REVIEW**

Plaintiffs have "the burden of showing that the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act ("APA").  *Regents of the Univ. of California v. Burwell*, 155 F. Supp. 3d 31, 53 (D.D.C. 2016) (citations and internal quotations omitted), *aff'd sub nom.*, *Regents of the Univ. of California v. Price*, 681 F. App'x 5 (D.C. Cir. 2017); 5 U.S.C. § 706.  Contrary to Plaintiffs' assertion (Pls. Br. at 21), there is no "burden shift[ing]" under the APA—the responsibility of demonstrating the invalidity of an agency action belongs squarely and entirely to Plaintiffs.[8]

The scope of judicial review under the APA is "narrow" and "highly deferential." *Fulbright v. McHugh*, 67 F. Supp. 3d 81, 89 (D.D.C. 2014) (citations omitted).  The Court must "presume[] the agency's action to be valid" and must "not [] substitute its judgment for that of

---

[7] Following COP approval and prior to commencing offshore construction, DEV prepared and obtained all requisite agency concurrences in several plans implementing these requirements. *See* Dkt. 28 at 8-9 (recognizing same).

[8] This is in stark contrast to Plaintiffs' reliance on a non-APA case involving evidentiary burden-shifting unique to employee retaliation claims, which has nothing to do with judicial review of agency actions under the APA.  Pls. Br. at 21 (citing *Diaz v. Kaplan Higher Educ., LLC*, 820 F.3d 172, 176 (5th Cir. 2016)).

10

the agency." *Id.*  Plaintiffs must prove that "the agency has relied on factors which Congress has

not intended it to consider, [has] entirely failed to consider an important aspect of the problem,

[or has] offered an explanation for [that] decision that runs counter to the evidence before the

agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,

463 U.S. 29, 43 (1983).  For the agency's part, "[n]othing more than a brief statement is

necessary, as long as the agency explains why it chose to do what it did." *Fulbright*, 67 F. Supp.

3d at 89 (internal citations and quotations omitted); *see also Comtys. for a Better Env't v. E.P.A.*,

748 F.3d 333, 335 (D.C. Cir. 2014) (APA arbitrary and capricious standard "requires that agency

action simply be reasonable and reasonably explained").

      In adjudicating APA claims, "the court shall review the whole record or those parts of it

cited by a party, and due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.

The Court plays a "limited role in reviewing the administrative record."  *Fulbright*, 67 F. Supp.

3d at 89.  The Court typically may not look beyond the record that was before the agency at the

time it made the challenged decision.  *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2559

(2019); *see also Camp v. Pitts,* 411 U.S. 138, 142 (1973) (APA review is based "not [on] some

new record made initially in the reviewing court"); *Dallas Safari Club v. Bernhardt*, 518 F.

Supp. 3d 535, 538 (D.D.C. 2021) (courts will go beyond the agency's record only in

"exceptional cases") (citations omitted).  As Federal Defendants have amply and aptly explained,

Plaintiffs accepted without objection the administrative record filed in this case.  Dkt. 38-1 at 9.

      Plaintiffs cannot rely on the ESA itself for a different standard of review, particularly

given that they assert that their claims are solely based on the APA.  *Compare* Pls. Br. at 21-22

*with id.* at 15 ("this ESA claim is brought under the APA, not under the … ESA"), *id.* at 21

("Agency decisions under the ESA are governed by the APA").  Similarly, Plaintiffs cannot invoke the U.S. Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), or any other case, to displace the APA or duly promulgated ESA regulations that Plaintiffs' Amended Complaint does not challenge.  *See* Pls. Br. at 21-22.  Plaintiffs cite nothing, including *Loper Bright*, that supports their notion that rote application of governing regulations requires "first ascertaining the proper meaning of the statutory language."  *See id.* at 22.  Plaintiffs' claims against the BiOp for CVOW do not entail statutory interpretation by agencies as at issue in *Loper Bright*, but rather particular factual determinations based on agency regulations and expertise for which *Loper Bright* does not disturb APA deference.  *See* Argument I.B, *infra*.

## ARGUMENT

**I.    NMFS DID NOT VIOLATE THE ESA.**

### A.    NMFS Adhered to Its Duly Promulgated, Longstanding ESA Regulations Defining the Scope of Relevant Cumulative Effects.

Plaintiffs' summary judgment motion boils down to a single merits argument:  that NMFS somehow violated the ESA by failing to analyze the potential cumulative effects from "other offshore wind projects now on the drawing board."  Pls. Br. at 23.  This position wholly ignores well-settled law defining relevant ESA cumulative effects—which NMFS followed here. It also ignores the administrative record demonstrating that NMFS (and BOEM) undertook a conservative and comprehensive analysis of relevant cumulative effects from CVOW. Specifically, NMFS considered potential NARW impacts from CVOW both individually and cumulatively with private, state, and already approved federal actions, including offshore wind projects that have already completed ESA Section 7 consultation.  NOAA_000116-17, 136-37, 215-16.

The ESA regulations define an "action" for Section 7 consultation to include, among other things, "the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid." 50 C.F.R. § 402.02(c). Here, as Plaintiffs have admitted, that action is BOEM's approval of CVOW's COP. *See* Dkt. 22 at 4. NMFS is tasked with analyzing the "effects of the action"—*i.e.*, "caused by" the action. *Id.* NMFS considers those effects against the "environmental baseline." *Id.* In addition, NMFS must consider the "cumulative effects" from certain covered unrelated actions. *Id.*; *see also* 50 C.F.R. § 402.14(g)(2)-(4). It is solely (and only) this last step that Plaintiffs challenge here.

"Cumulative effects" under ESA regulations expressly *exclude* future federal activities. Rather, they include only "those effects of future State or private activities, *not involving Federal activities*, that are reasonably certain to occur within the action area of the Federal action subject to consultation." 50 C.F.R. § 402.02 (emphasis added). For CVOW, NMFS considered all "future state, tribal, local, or private (non-Federal) actions reasonably certain to occur in the action area" for CVOW, which specifically included such non-federal activities as recreational fisheries, fisheries authorized by states, use of the action area by private vessels, commercial and private anthropogenic noise sources, and coastal development authorized by state and local governments. NOAA_000215. Per the regulatory definition, possible actions such as planned offshore wind projects that will be subject to future ESA Section 7 consultations, which Plaintiffs insist were "ignored," *must necessarily* be excluded from NMFS's consideration of cumulative effects. 50 C.F.R. § 402.02; *see* Pls. Br. at 23. Such information therefore is not relevant, much less the "best scientific and commercial data available" information under the ESA. *See* 16 U.S.C. § 1536(a)(2).

NMFS's regulatory definition of "cumulative effects" under the ESA has been in existence for nearly four decades.  51 Fed. Reg. 19,926, 19,958 (June 3, 1986).  That definition is well-founded and does not exist by happenstance; it reflects the fact that future federal actions will trigger their own ESA Section 7 consultations and obtain incidental take coverage as needed, rendering near-term speculation unnecessary.  51 Fed. Reg. at 19,933 ("Since all future Federal actions will at some point be subject to the [S]ection 7 consultation process pursuant to these regulations, their effects on a particular species will be considered at that time and will not be included in the cumulative effects analysis.").  All future offshore wind projects on the Atlantic Outer Continental Shelf will require federal agency approvals and ESA Section 7 consultation, and hence are excluded from the plain language definition of cumulative effects that must be considered for CVOW.[9]

Even if such information about potential future federal approvals of other offshore wind projects were somehow relevant to ESA cumulative effects for CVOW (which it is not), the effects also must be "reasonably certain to occur within the action area."  50 C.F.R. § 402.02.  But here, Plaintiffs target in a scattershot manner *all* offshore wind projects on the Atlantic seaboard, with no distinction in proximity, size, permitting posture, or other attributes.  *See* Pls. Br. at 22 ("NMFS intentionally chose to exclude from its analysis the effects that the 29 other planned offshore wind projects along the Right Whale's annual migration path will have" on NARW).

---

[9] *See also, e.g.*, *Miccosukee Tribe of Indians of Fla. v. U.S.*, 566 F.3d 1257, 1269 (11th Cir. 2009) (explaining this framework); *Sierra Club v. U.S. Dep't of Interior*, 990 F.3d 898, 907 (5th Cir. 2021) (same); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1113 (9th Cir. 2012) (same).

Plaintiffs also ignore the fact that NMFS considered previous federally-approved offshore wind projects in the action area within the "environmental baseline" for CVOW. NOAA_000116-17, 136-37, 215-16. That regulatory term is defined as the condition of the listed species or its critical habitat, including "past and present impacts of all Federal, State, or private actions and other human activities in the action area, the anticipated impacts of all *proposed* Federal projects in the action area *that have already undergone* formal or early [S]ection 7 consultation, and the impact of State or private actions which are contemporaneous with the consultation in process."[10]  50 C.F.R. § 402.02 (emphasis added). Those offshore wind projects up and down the Atlantic seaboard included Vineyard Wind 1, South Fork Wind, Revolution Wind, Ocean Wind 1, and Empire Wind, as well as two smaller scale offshore wind projects. NOAA_000136-37.

In sum, NMFS properly considered CVOW's possible effects on NARW in conjunction with past federal projects that are within the "environmental baseline" and future non-federal projects that are "cumulative effects." *See* 50 C.F.R. § 402.14(g)(4). Based on its proper analysis, NMFS reasonably found that CVOW (the "action" under 16 U.S.C. § 1536(a)(2)) is "not likely to jeopardize the continued existence" of NARW (or other species). *See id.*; NOAA_000053-54, 69, 231. Meanwhile, each potential future federally approved project will be the subject of its own ESA Section 7 consultation at the time of its approval, and in turn will consider CVOW as part of its own environmental baseline.

---

[10] To be clear, "early" Section 7 consultation does not mean early steps in a formal consultation. Rather, early consultation is a distinct process not utilized for CVOW, which is "requested by a Federal agency on behalf of a prospective applicant under [S]ection 7(a)(3) of the [ESA]," before a permit application is filed. 50 C.F.R. § 402.02; *see* 16 U.S.C. § 1536(a)(3). Like formal consultation, early consultation must still be "already undergone" rather than merely commenced to be included in the environmental baseline.

On-point decisions by this Court refute any ESA obligation to consider cumulative effects of future projects requiring their own federal authorization and Section 7 consultation. *See, e.g.*, *Fund for Animals v. Hall*, 448 F. Supp. 2d 127, 136 (D.D.C. 2006) ("the ESA only requires agencies to consider the cumulative impacts of non-federal actions"); *Defs. of Wildlife v. Norton,* No. 99-927, 2003 WL 24122459, at *5 (D.D.C. Jan. 7, 2003) (this Court did "not … impos[e] a requirement that each [BiOp] include a collective jeopardy finding, *i.e.,* a determination whether *all* federal agency action, considered together, is likely to jeopardize the continued existence of the [species]") (emphasis in original).  The U.S. Court of Appeals for the First Circuit recently also rejected a NARW "additive effects" claim against the Vineyard Wind 1 offshore wind project.  *Nantucket Residents,* 100 F.4th at 20.  Plaintiffs' silence on this authority speaks volumes.

Plaintiffs' attempts to contort inapposite case law to support their argument fare no better, as nothing therein contradicts the ESA regulations' decades-old definition of "cumulative effects" or suggests that the relevant ESA action for CVOW was all Atlantic offshore wind development.  In contrast to here, the Ninth Circuit in *Pacific Coast Federation of Fishermen's Ass'n v. NMFS* addressed a challenge to *multiple* biological opinions that would permit 23 proposed timber sales—*i.e.*, multiple federal actions.  265 F.3d 1028 (9th Cir. 2001).  *Sierra Club v. NMFS* addressed a *programmatic* biological opinion for "*all* activities" associated with oil and gas development throughout the Gulf of Mexico, not "an offshore oil well" as Plaintiffs misstate (Pls. Br. at 24).  No. DLB-20-3060, 2024 WL 3860211 (D. Md. Aug. 19, 2024).  Plaintiffs' other cited cases likewise did *not* find that one ESA consultation must encompass all future leasing and development beyond the agency action at issue.  *See N. Slope Borough v. Andrus*, 624 F.2d 589 (D.C. Cir. 1980) (sale of all oil and gas leases in the Beaufort Sea); *Ctr.*

*for Biological Div. v. Regan*, No 21-119, 2024 WL 1602457 (D.D.C. April 12, 2024) (delegation of Clean Water Act permitting authority and potential ESA liability protection for all subsequently state-issued dredge and fill permits); *Conner v. Burford*, 848 F.2d 1441, 1453-58 (9th Cir. 1988) (ESA effects of onshore oil and gas leasing included subsequent development of *those issued leases*); *Thomas v. Peterson*, 753 F.2d 754, 763 (9th Cir. 1985) (no ESA consultation occurred at all).

Stated and viewed in their proper and correct context, Plaintiffs' cases stand for the unremarkable proposition that an ESA consultation must encompass the entirety of a single action by a federal agency, which is precisely what NMFS did here for CVOW. Plaintiffs here challenge only one project: CVOW. And Plaintiffs do not even challenge NMFS's issuance of a separate CVOW biological opinion in conjunction with BOEM's issuance of DEV's CVOW lease under OCSLA, as distinct from the challenged BiOp for BOEM's approval of CVOW's COP.[11] Because the challenged BiOp did not even need to include all CVOW activities, it certainly did not need to include all future leases or approvals for other offshore wind projects.[12]

### B. Plaintiffs Here Cannot Challenge NMFS's Regulatory Definition of "Cumulative Effects."

Unlike earlier in this case, Plaintiffs now finally acknowledge the pertinent ESA regulation at 50 C.F.R. § 402.02, which, as discussed above, undercuts their arguments by

---

[11] BOEM, Final Sale Notice, 78 Fed. Reg. 44,150-51 (July 23, 2013) ("On May 29, 2012, BOEM initiated consultation with the National Marine Fisheries Service under the ESA for geological and geophysical (G&G) activities in support of oil and gas exploration and development, renewable energy, and marine minerals in the Mid and South Atlantic Planning Areas. Formal consultation concluded on May 24, 2013, with receipt of a Biological Opinion that, along with the previous informal consultation, informed the development of the Virginia commercial wind lease package.").

[12] *Conner*, following *North Slope*, *supra*, distinguished the offshore leasing legal framework under OCSLA—also applicable to CVOW here—where "incremental-step [ESA] consultation" *is* allowed. 848 F.2d at 1453-58 (noting that this interpretation has been affirmed in *Sec. of Interior v. California*, 464 U.S. 312, 337 (1984)); 43 U.S.C. § 1337(p).

plainly excluding future federal activities from the ESA cumulative effects considered for a given project.[13]  In a desperate attempt to salvage their ESA claim, they now ask this Court not to "defer" to the decades-old regulation, arguing that it conflicts with the ESA.  Pls. Br. at 26, 36–39.  This argument is both barred and baseless.

The regulation at 50 C.F.R. § 402.02 is not the subject of this lawsuit.  Plaintiffs' Amended Complaint challenges only certain authorizations specific to CVOW.  None of its four causes of action facially challenges the regulation itself.  It is axiomatic that Plaintiffs cannot obtain summary judgment on a cause of action they did not bring.  *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.") ; *Greenlaw v. U.S.*, 554 U.S. 237, 244 (2008) (courts "normally decide only questions presented by the parties") (citation omitted); *McKinney v. U.S. Postal Serv.*, 75 F. Supp. 3d 266, 279 (D.D.C. 2014) (plaintiff may not assert new claims in a motion for summary judgment).

Even if a facial challenge to 50 C.F.R. § 402.02 were properly a subject of this action, any such claim would be time-barred, as Federal Defendants have correctly explained.  Dkt. 38-1 at 34.  Claimants must file civil suits against the government "within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  Any purported harm to Plaintiffs from this regulation occurred more than six years ago, as this regulation has been consistently applied for decades in the same way as it was for CVOW's BiOp, and likewise for decades after Plaintiffs admittedly

---

[13] For example, when seeking preliminary relief, Plaintiffs argued that NMFS "flatly violated its own regulations on what information NMFS must consider."  Dkt. 22 at 10.  Now on summary judgment, Plaintiffs concede that NMFS here adhered to "NMFS' regulations [that] explicitly exclude from its Section 7 analysis the cumulative impacts of a certain subset of known impacts from other offshore wind projects."  Pls. Br. at 15.

came into existence. *See Corner Post, Inc. v. Board of Governors of the Fed. Res. System*, 603 U.S. 799, 825 (2024).

Moreover, "deference" to an agency's statutory interpretation is not involved when an agency follows a duly-promulgated and unchallenged regulation, which is what occurred here. Courts cannot ignore the existence or plain terms of a regulation. *Burns v. Barnhart*, 312 F.3d 113, 125 (3rd Cir. 2002). "The regulation then just means what it means – and the court must give it effect, as the court would any law." *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). *Loper Bright* likewise does not allow courts to ignore duly promulgated regulations, particularly when, as here, they are unchallenged in a given case; rather, *Loper Bright* involved a facial challenge to a newly adopted regulation based on the agency's statutory interpretation. 144 S. Ct. at 2255-57.

The cases Plaintiffs cite—none of which involved ESA Section 7 consultation for agency action under OSCLA—yield no different outcome. For instance, *Maine Lobstermen Association v. NMFS*, 70 F.4th 582 (D.C. Cir. 2023), and *Wild Fish Conservancy v. Salazar*, 628 F.3d 513 (9th Cir. 2010), dealt with an agency's interpretation of the ESA outside the context of a duly promulgated regulation or law, and also had nothing to do with the cumulative effects under the ESA. *Maine Lobstermen* considered the validity of NMFS's decision to make conservative assumptions about lobster fisheries' impacts on NARW in the absence of data based on its interpretation of the ESA *legislative history*, not a regulation. 70 F.4th at 596–97. And *Wild Fish Conservancy* dealt with the Fish and Wildlife Service's improper application of its own regulations in defining the life of a decades-old fish hatchery as only the next five years. 628 F.3d at 521–23. This Court here should not (and need not) question NMFS's established, plain language regulatory definition of cumulative effects.

C.    **The Administrative Record Demonstrates that NMFS Adequately Analyzed Potential NARW Impacts from CVOW.**

Besides their myriad misstatements of the law, Plaintiffs provide this Court no reason to disregard NMFS's "considered determinations" of the scientific information presented in the administrative record here on CVOW's potential effects on NARW. *Nantucket Residents Against Turbines v. U.S. Bureau of Ocean Energy Mgmt.*, 675 F. Supp. 3d 28, 58 (D. Mass. 2023), *aff'd*, 100 F.4th at 20. Plaintiffs do not point to, and the record does not demonstrate, any CVOW-caused harm to NARW. Even if Plaintiffs had not waived any disagreement with NMFS's analysis, this Court's role is not to second-guess NMFS's scientific findings. *Id.* at 58 ("Plaintiffs disagree with NMFS's conclusions after review of the data, but the court may not second-guess NMFS's considered determinations."). The ESA vests NMFS with discretion as to what constitutes "best scientific and commercial data," which "is itself a scientific determination deserving deference." *Id.* at 57 (citing *Miccosukee*, 566 F.3d at 1257). Deference to agencies is at its highest where (as here) a court is reviewing an agency action that required a high level of technical expertise.[14] *See Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989); *Baltimore Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 103 (1983) (When examining "scientific determination[s], a reviewing court must generally be at its most deferential.")

And Plaintiffs identify no salient cumulative effects on NARW that NMFS failed to consider. Their newly manufactured concerns about turbine safety and microplastics (Pls. Br. at 7-13) are speculative, rely exclusively on inadmissible extra-record evidence, and were not previously raised on the record by themselves or others.[15] As Federal Defendants explained,

---

[14] *Loper Bright* also distinguished agency "factbound determinations" applying a statute to a particular set of facts—which describes NMFS's action that Plaintiffs challenge here—as warranting greater deference than agency interpretations of law. 144 S. Ct. at 2259.

[15] *See* NOAA_000894 (Plaintiffs' 60-day notice to sue under the ESA); Dkt. 1, 11 (Plaintiffs' original and amended complaints); BOEMCVOW_1505-1815 (BOEM responses to comments

Plaintiffs' heavy reliance on information outside the administrative record is alone fatal to their claims. *See* Dkt. 38-1 at 8-14; *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2559 (2019); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 538–39 (D.D.C. 2021). Plaintiffs also are precluded from raising any objections that they did not raise with NMFS and BOEM. *Dep't of Transportation v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004); *see also Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) ("It is black-letter administrative law that absent special circumstances, a party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue.") (internal citations and quotations omitted); *see also* 40 C.F.R. § 1503.3 ("To promote informed decision making, comments on an environmental impact statement or on a proposed action shall be as specific as possible."). Indeed, the First Circuit earlier this month expressly excluded the same "recent developments" claims by Plaintiffs' same counsel representing other plaintiffs against the Vineyard Wind 1 offshore wind project. *Seafreeze*, 2024 WL 4986216 at *18 ("These incidents, occurring after the challenged agency decisions, are not relevant to the arguments made in these appeals.").

      In any event, no NARW deaths or injuries have been attributed to the turbine mechanical problems that Plaintiffs allege, and such events are hardly "reasonably certain" to occur considering the extensive maintenance to be conducted. *See* 50 C.F.R. § 402.02. Plaintiffs also ignore that the BiOp *does* consider related turbine maintenance and marine debris issues. *E.g.*, NOAA_000135-36 (marine debris, including plastic); NOAA_000032-34 (turbine maintenance and monitoring); NOAA_000183 (waste management and mitigation of marine debris); NOAA_000313-314 (mitigation, monitoring, and reporting measures regarding marine debris).

---

on the DEIS); BOEMCVOW_124988 (CFACT comment letter); NOAA_000751–000767 (NMFS's responses to public comments on proposed incidental take regulations).

In addition to belatedly raising new generalized concerns about offshore wind projects, Plaintiffs cherry-pick and mischaracterize individual documents outside of the administrative record. For example, they cite a 2022 letter from Sean Hayes at NMFS to BOEM regarding wind projects offshore New England (Dkt. 36-3). But as Federal Defendants point out, that letter is extra-record and thus irrelevant. Dkt. 38-1 at 12-13. In any event, the BiOp issued here 18 months after that letter explicitly considered that information and imposed reasonable and prudent measures to minimize the effects of any incidental take of NARW and other listed species. NOAA_000063. Dr. Hayes' NARW concerns were also "equivocal," as this Court observed in denying Plaintiffs' motion for preliminary relief based on the very same letter. Dkt. 28 at 9. Separately, Plaintiffs heavily rely (*e.g.*, Pls. Br. at 2 n.4, 7) on a joint BOEM-NMFS "strategy" document that post-dates the challenged BiOp and is outside the administrative record here. Regardless, that document is merely non-binding guidance, supports the suite of NARW protective measures adopted for CVOW, and at base deems offshore wind as compatible with NARW protection.

## II.    BOEM DID NOT VIOLATE THE ESA.

Plaintiffs further strain to extend their single merits argument from NMFS to BOEM, arguing that BOEM's reliance on NMFS's BiOp to issue the ROD and approve the COP for CVOW was arbitrary and capricious because the BiOp did not consider the cumulative effects of "the 30 Atlantic Coast offshore wind projects it has approved or is likely to approve in the future." Pls. Br. at 33-34. But to demonstrate that BOEM improperly relied on a NMFS's BiOp, Plaintiffs must prove either that "the [BiOp] is defective" or that BOEM "blindly relie[d] on the [BiOp] without conducting its own independent analysis." *Nantucket*, 100 F.4th at 21. Plaintiffs here fail twice over.

As discussed above, the BiOp is not deficient.  NMFS followed its regulations in assessing cumulative effects associated with CVOW, which included consideration of potential impacts on NARW from already federally-approved offshore wind projects.  Nor have Plaintiffs at all demonstrated that the BiOp is "facially flawed" or that its deficiency is "legal in nature." *Center for Biological Diversity v. Regan*, No. 21-119, 2024 WL 1602457 at *37 (D.D.C. Apr. 12, 2024).  Because the BiOp is not deficient, BOEM necessarily did not rely on a deficient BiOp.

What is more, BOEM hardly can be said to have blindly relied on NMFS's BiOp when BOEM conducted its own cumulative effects analysis under NEPA (for which, again, Plaintiffs have waived any challenge, *see* Background Section B, *supra*).  BOEMCVOW_410–492 (Final EIS § 3-15).  Moreover, as recognized by NMFS, Plaintiffs, and courts, NEPA's procedural requirements "warrant a more expanded review of cumulative effects" than the ESA's substantive requirements.  51 Fed. Reg. 19,933; Pls. Br. at 38, 42; *Fund for Animals*, 448 F. Supp. 2d at 136 ("[T]he ESA only requires agencies to consider the cumulative impacts of non-federal actions, while NEPA requires agencies to consider the cumulative impacts of all actions.").  That is, NEPA requires consideration of certain future federal actions, whereas the ESA expressly excludes them.  *Compare* 40 C.F.R. § 1508.1(i)(3) (defining NEPA "cumulative effects" as "effects on the environment that result from the incremental effects of the action when added to the effects of other past, present, and reasonably foreseeable actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions"), *with* 50 C.F.R. § 402.02 (defining ESA cumulative effects as "those effects of future State or private activities, not involving Federal activities, that are reasonably certain to occur within the action area of the Federal action subject to consultation").

The EIS here considered potential cumulative effects to NARW from other possible future offshore wind development activities on the Atlantic Outer Continental Shelf. BOEMCVOW_42, 410–411 (depicting geographic analysis area analyzed under NEPA for potential impacts to NARW), BOEMCVOW_820–954 (description of "other ongoing or planned activities" considered under NEPA review). Plaintiffs harp on the EIS's label of potential NARW effects as "major" for NEPA purposes (*e.g.,* Pls. Br. at 35), but omit that this conclusion was based on other offshore activities in the *no action* alternative (*i.e.*, *without* CVOW), and that CVOW's incremental impact on right whales is, in fact, only "minor." BOEMCVOW_445, 460 (Final EIS §§ 3.15-51, 3.15.3.3); *cf.* Pls. Br. at 35. In any event, Plaintiffs point to nothing equating that so-called major label for NEPA purposes with jeopardy for ESA purposes. Nor do Plaintiffs cite any finding that "serious injury or loss of an individual" would in fact occur due to CVOW, which is unsurprising given that the BiOp authorized no such take for NARW. *Cf.* Pls. Br. at 35. Nor do Plaintiffs identify any exceeded NARW take limit that would "trigger" BOEM to request reinitiation of ESA consultation. *Cf. id.* at 34-35.

"It does not suffice, when urging an action agency to reject the BiOp of a consultant agency, simply to reargue factual issues the consultant agency already took into consideration." *City of Tacoma v. FERC*, 460 F.3d 53, 76 (D.C. Cir. 2006) (citing *Pyramid Lake*, 898 F.2d at 1415–16). Yet Plaintiffs do just that—rearguing issues NMFS already considered, not to mention ignoring BOEM's own extensive NARW analysis under NEPA. The First Circuit recently considered a similar argument and rejected it. *Nantucket*, 100 F.4th at 7–8, 21. This Court, respectfully, should reach the same result here.

## III.    PLAINTIFFS LACK STANDING.

At the summary judgment merits phase, Plaintiffs cannot show they have standing because (1) they have not suffered any concrete, particularized injury in fact; (2) their unproven

alleged injuries are not fairly traceable to the alleged misconduct of the Federal Defendants; and
(3) granting Plaintiffs the relief they seek would not redress their alleged injuries.  *See Lujan v.
Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs' misrepresentation of the record,
suggesting that the Court definitively "found that Plaintiff, Craig Rucker, had standing" at the
preliminary injunction stage, cannot cure their inability to demonstrate standing on summary
judgment.  Pls. Br. at 16; Dkt. 28 at 8 (finding "Plaintiffs have shown a substantial likelihood
that at least one plaintiff, Mr. Rucker, has standing *to seek a preliminary injunction or
administrative stay*") (emphasis added); *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022
(D.C. Cir. 1998).  Plaintiffs' alleged injury is solely "procedural," as this Court previously and
correctly observed (Dkt. 28 at 6), and Plaintiffs prove no underlying concrete injury in fact
sufficient to confer standing on summary judgment.  DEV also concurs with Federal Defendants'
arguments refuting Plaintiffs' standing on summary judgment.  Dkt. 38-1 at 15-17.

Plaintiffs further make no effort to show that any of the non-individual Plaintiffs
(CFACT, NLPC, and Heartland Institute) have standing.  *See* Pls. Br. at 36-43.  That fails to
carry Plaintiffs' burden on summary judgment.  *See Lujan*, 504 U.S. at 561 (at the summary
judgment stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth'
by affidavit or other evidence 'specific facts'" that establish standing); *Sierra Club v. E.P.A.*, 292
F.3d 895, 901 (D.C. Cir. 2002) (dismissing plaintiffs' petition challenging agency action where
plaintiffs failed to advance evidence of standing, and observing that when "the petitioner does
not submit evidence of [standing] facts with its opening brief[,] … the respondent is therefore
left to flail at the unknown in an attempt to prove the negative") (citations omitted).  In any
event, unlike traditional membership organizations that may have standing, these Plaintiffs are
special interest policy advocacy organizations.  *See, e.g.*, *Am. Legal Found. v. F.C.C.*, 808 F.2d

84, 90 (D.C. Cir. 1987). While anyone can donate to these organizations, each lacks a "discrete, stable group of persons with a definable set of common interests." *See Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002). Indeed, CFACT points to Mr. Rucker, its organization's founder and president, while NLPC points to Mr. Flaherty, its organization's chairman, chief executive, and co-founder. *See Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 26 (D.C. Cir. 2002) (no associational standing where organization's founder and chief executive was the only identified "member").

The thin summary judgment declarations of the two individual Plaintiffs, Craig Rucker and Peter Flaherty, also do not demonstrate standing. *See* Dkt. 36-4, 36-5.

Mr. Flaherty does not even allege an aesthetic or recreational injury caused by the NMFS or BOEM actions. His sole alleged injury is a CVOW-related surcharge of a couple of dollars on his monthly utility invoices, which is not an aesthetic or recreational injury—or even related to NARW. Cost recovery from customers for CVOW is a function administered and regulated by the State Corporation Commission of Virginia under state law, not by the NMFS or BOEM actions Plaintiffs purport to challenge here. *See* Va. Code §§ 56-585.1 A.1-3 & A.6; 56-585.1.11 C.3 & C.4. This claimed injury is patently insufficient. *See also Kinsella*, 2023 WL 3571300, at *3 (rejecting claimed harm from "potential increase in electricity prices in the area resulting from the [offshore wind] Project's expense").

Mr. Rucker's alleged injury to his interest in whale watching is likewise insufficient on summary judgment because it is unsupported by any evidence and because the BiOp precludes pile driving when he intends to visit the vicinity of the CVOW project area. Moreover, the BiOp in no way prevents Mr. Rucker from observing NARW. Rudee Tours, the tour company where Mr. Rucker reserved a whale-watching trip, does not even begin providing whale-watching tours

26

until late November each year and *guarantees* whale sightings during the December through February whale-watching season.[16]  Mr. Rucker's alleged and unquantified economic harm from "energy bills" fails similarly as for Mr. Flaherty.  Mr. Rucker's assertion that "noise" and "visual" harm from *onshore* construction activities is irrelevant because the Amended Complaint wholly relies on alleged injury to NARW and challenges a NMFS BiOp that exclusively deals with *offshore* activities.  And those onshore activities occur at least 27 miles away from CVOW's offshore components that he claims as harming NARW.  NOAA_000014.  Moreover, any alleged harm to Mr. Rucker is not redressable here because the alleged source of harm— purportedly unconsidered cumulative effects of other offshore wind projects—will occur regardless.  Thus, Mr. Rucker cannot establish injury caused by the challenged agency action and redressable in this case.

Finally, Plaintiffs' reliance on *Sierra Club v. U.S. Army Corps of Engineers*, 803 F.3d 31, 53 (D.C. Cir. 2015), to support redressability for standing here is illogical.  First and most importantly, the D.C. Circuit in that case upheld the district court's ruling granting summary judgment in favor of the federal agencies.  803 F.3d at 53.  Second, the opinion does not even discuss redressability, and the section of the opinion Plaintiffs cite analyzes mootness, which is not an issue here.  *Id*. at 43.  Third, the D.C. Circuit rejected Sierra Club's challenges to the biological opinion and resulting incidental take statements.  *Id*. at 47-48.  And finally, although Sierra Club challenged the action agency's cumulative effects analysis under NEPA (which Plaintiffs do not here), the court upheld the agency's analysis of cumulative effects, explaining that "[t]he cumulative actions doctrine therefore does not advance Sierra Club's case."  *Id*. at 51.  Thus, even the case law Plaintiffs rely upon roundly defeats their claims.

---

[16] Rudee Tours, Frequently Asked Questions, https://www.rudeetours.com/faq/.

## IV.    PLAINTIFFS FAIL TO JUSTIFY THEIR REQUESTED REMEDIES.

Plaintiffs have not shown any violation of the ESA, NEPA, or APA.  Plaintiffs thus are not entitled to any relief at all—on summary judgment or otherwise.

Even if their claims had merit (which they do not), Plaintiffs fail to justify their proposed remedies that the BiOp be "vacated" and "that Project construction shall not continue until [BOEM and NMFS] comply with the [ESA]."  Dkt. 36-2.  Plaintiffs have challenged no agency approval other than involving the NMFS BiOp; for example, they do not challenge the BOEM COP approval or the separate onshore BiOp issued by the U.S. Fish and Wildlife Service.[17] Plaintiffs fail to address, let alone satisfy, the *Monsanto* factors to obtain the equivalent of injunctive relief, which are akin to the test for preliminary relief that Plaintiffs already previously failed to satisfy in this Court.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010).  Nor do Plaintiffs carry their burden to address the *Allied Signal* factors regarding remand with or without vacatur in this Circuit, including the seriousness of the action's deficiencies and "the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).

Any alleged "deficiency" with the BiOp and BOEM's reliance on it is not significant.  It is more than "conceivable" on remand that (1) NMFS would again follow its ESA regulations in defining relevant cumulative effects analysis, and (2) BOEM would again reasonably rely on the BiOp, as well as its existing NARW analysis in the EIS.  *See id.* (concluding that it was "conceivable" that an agency would be able to adequately explain its action on remand).  Also, the consequences of vacatur pending remand would be dire, for similar reasons provided in the

---

[17] U.S. Fish and Wildlife Service biological opinion for CVOW (Aug. 31, 2023), https://www.boem.gov/renewable-energy/state-activities/20230831memofwstoboemcvow-bosigned; *see also* https://www.permits.performance.gov/proj/coastal-virginia-offshore-wind-commercial-project/endangered-species-act-consultation-doi-fws.

Declaration of Grant T. Hollett submitted in opposition to Plaintiffs' denied motion for

preliminary relief.  *See generally* Dkt. 20-1.

**CONCLUSION**

For the foregoing reasons, the Court should grant DEV's and Federal Defendants' cross-

motions for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated:  December 17, 2024                    Respectfully submitted,

                                      */s/ James M. Auslander*
                                      JAMES M. AUSLANDER
                                      D.C. Bar No. 974898
                                      HILARY T. JACOBS
                                      D.C. Bar No. 1021353
                                      JULIUS M. REDD
                                      D.C. Bar No. 1025695
                                      Beveridge & Diamond, P.C.
                                      1900 N Street, NW, Suite 100
                                      Washington, D.C. 20036
                                      Telephone: 202-789-6000
                                      Fax: 202-789-6190
                                      jauslander@bdlaw.com
                                      hjacobs@bdlaw.com
                                      jredd@bdlaw.com

                                      *Counsel for Virginia Electric and Power Company,*
                                      *d/b/a Dominion Energy Virginia*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served upon all

counsel of record through the CM/ECF electronic filing system on December 17, 2024.

> */s/ James M. Auslander*
> JAMES M. AUSLANDER